**GOVERNMENT OF THE VIRGIN ISLANDS, Plaintiff**

**v.**

**EFRAIN ALEJANDRO, JESUS SANTIAGO and MIGUEL COLON, Defendants**

Crim. No. 1974-81

District Court of the Virgin Islands

Div. of St. Croix

November 13, 1974

■■■■■

■■■■■■■■■

TRESTON MOORE, ESQ., Assistant Federal Public Defender, Christiansted, St. Croix, V.I., *for defendant Efrain Alejandro*

EDGAR D. ROSS, ESQ., Christiansted, St. Croix, V.I., *for defendant Jesus Santiago*

LEROY A. MERCER, ESQ., Christiansted, St. Croix, V.I. *for defendant Miguel Colon*

YOUNG, *District Judge*

### MEMORANDUM OPINION AND ORDER

During the first day of trial in this case, the prosecution called Mr. Jose Soto (herein "Soto"), the assaulted victim, to the stand and examined him as to the events just immediately preceding, during and after the alleged assault at his house at or about 1:00 A.M., August 14, 1974. Soto is an illiterate, 87 year-old Puerto Rican, who speaks and understands only Spanish. Therefore, the services of a translator were used.

After describing the assault, Soto was asked if he could identify his assailants. He said that there were three and that he knew one of them to be Jesus Santiago, one of the defendants. When asked if he could identify and point him out in the courtroom, he pointed in the general direction of defense counsels' table where the three defendants sat, each defendant being seated with his attorney. When asked "which one?", he replied "the one sitting next to the attorney". [Each defendant sat next to an attorney.] When

asked again to be more specific—and I must comment that there was an obvious language barrier and problem— he again repeated: "the one sitting next to the attorney". At this point, the prosecutor pointed directly at defendant Jesus Santiago and asked, "You mean the one sitting at the head of the table?". Before this question was translated into Spanish, it was objected to by defendant Santiago's counsel and the objection was sustained by me. At the side-bar conference that followed, defense counsel moved for "mistrial because of the improper in-court identification". The pointing to Santiago was more than a suggestion, even without the help of the translation.

I denied the mistrial motion on the prosecutor's proffer that he would bring out further testimony from Soto to show unquestionably that Jesus Santiago was well known to Soto for many years and that because of this friendship, or perhaps more aptly described as acquaintanceship, if indeed it was even that, he was able to positively identify Jesus Santiago as one of the assailants.

The prosecutor then brought out from Soto in the ensuing strained examination due to the language difficulties— and perhaps the inability of the illiterate witness properly to express himself—that Soto knew Jesus' father and that he has known Jesus from the time that he was a little boy. It was not so much in what Soto said as in *how* he said that he knew defendant Jesus—his demeanor was that of an old man being offended by the questioning of how well he knew defendant Jesus Santiago. At the in-chamber meeting thereafter when defense counsel renewed his motion for a mistrial, I denied the motion, being convinced that Jose Soto did in fact have a completely independent source and ability to identify Santiago and, therefore, the highly improper and suggestive in-court identification was not prejudicial and did not taint the identification.

However, I must reverse myself now that I have heard the cross-examination of Soto by all three defense attorneys. The translated examinations were difficult to both examiner and examinee (and perhaps trying to judge and jurors), but from the somewhat evasive answers I would find as follows: that Soto really does not know Jesus Santiago; he knew his father for many years and probably saw the father with his son on occasion, but he could not recollect the last time that he had seen them, nor could he say that he knew Jesus Santiago's first name of "Jesus", nor did he know if Jesus had any brothers or sisters, nor had he ever talked to Jesus.

In view of the circumstances surrounding the assault: (1) no direct lighting, but only a possible faint illumination from a light above the shed roof and (2) the lack of adequate time to see his assailants before he was knocked unconscious from the blow of a shovel (which he testified was done "right away" after he opened the door), I must conclude that his identification of defendant Santiago by name several weeks later (after he was released from the hospital) may have been suggested to him by those who knew that Jesus Santiago was one of the suspects picked up within an hour of the assault. With this background, I cannot but reverse my initial ruling on defense counsel's motion for a mistrial.

### ORDER

For the reasons stated above, I do hereby declare a mistrial and will order a new trial as soon as practicable.